732 So.2d 1180 (1999)
James Joseph McFADDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 97-3911.
District Court of Appeal of Florida, Fourth District.
April 28, 1999.
*1181 Richard L. Jorandby, Public Defender, and Cherry Grant, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Terri Leon-Benner, Assistant Attorney General, Fort Lauderdale, for appellee.
FARMER, J.
Because the trial judge departed from the role of impartiality during a factfinding hearing, we reverse a final order of violation of probation.
Defendant had pleaded guilty to robbery with a firearm and was placed on two years probation as a habitual offender. Among the conditions of probation was a requirement that he file monthly reports with his probation officer (PO) and not depart from Broward County without the PO's permission.
In April 1997 the state filed an affidavit alleging several violations of probation: specifically that defendant (1) burglarized an automobile; (2) committed a petit theft of property from a store; (3) failed to file monthly reports for January, February and March 1997; (4) failed to pay costs of supervision; and (5) failed to pay court costs. He denied the allegations, and the matter went to a formal hearing before the trial judge.
At the beginning of the hearing in early September 1997, the State dismissed[1] the burglary and petit theft charges because of the lack of investigation and witness contact. The trial judge decided to proceed on the remaining charges because the failure to file monthly reports might be deemed a substantial violation, sufficient to revoke his probation. Defendant's PO then announced that he had amended the affidavit of VOP to include a new allegation *1182 that defendant had also left Broward County without his PO's permission. The judge stated that he would proceed with the hearing and, if defendant was found not guilty, he would allow the charges to be amended to include the allegation about the unauthorized departure from the County.
The state called a single witness to establish a prima facie case on the charges. Defendant's PO testified that "he" was to file reports by the 5th of the month and that "he" had filed a report for January 1997 but not since.[2] With that testimony, the state rested. But the State had rested without any identification of defendant and without establishing that defendant had been informed of the conditions of probation that he was now said to have violated. Defendant thus moved to dismiss the VOP charges on the grounds that there was insufficient evidence to support a violation. The trial judge responded:
"[To prosecutor] Want to reopen your case? I don't know whether he [the PO] knows who [defendant] is. I don't know if he was read his rules of probation. Do you want to ask me to reopen the case?" [emphasis supplied]
Not surprisingly the State accepted the judicial invitation to cure its omissions. Defendant objected, but the trial judge who had just invited this very procedure was hardly now going to find something wrong with it and thus overruled the objection. The State asked the PO to identify defendant and to testify that he was informed of the conditions of his probation.
Defendant did not cross-examine the PO but instead renewed his motion to dismiss for insufficient evidence. Without ruling on the defense motion, the trial judge instead cross examined the PO as to whether defendant had filed any reports for February and March. The PO responded that defendant had not done so. The court then turned to defendant and asked him directly whether he had filed for February and March. Defendant thought he had filed in mid-February, but the court said "that would be the monthly report for January." Defendant could not remember whether he filed for March and admitted not filing for April.
When he finished his own questioning, the judge announced that he was permitting an amendment of the charges to include the new charge that defendant had unauthorizedly left the County and gone to South Carolina. Without hearing any further evidence, the trial judge announced that defendant could not have been in South Carolina on the day alleged because the papers in the court file showed that he was arrested in Broward County on the same day. Defendant moved to dismiss this new charge and the trial judge stated that he was not guilty of leaving without permission but was guilty of failing to file reports.
At that point defendant protested that he had not had an opportunity to present a defense to the charges regarding the reports, whereupon the judge allowed him to do so. Defendant testified that he was unable to file reports because he was taken out of Florida without his knowledge. He testified that he had gone out drinking with one Wallace and had fallen asleep in Wallace's car. When he awoke, he testified, he was in Georgia nearing South Carolina and was not free just to leave. He explained that Wallace and another man, while under the influence of drugs, shot him and left him hospitalized in South Carolina. He explained that his failure to file the reports was not willful because he did not know that he had been taken from Broward County until he could do nothing about it, that he was forced to remain in the car at gun point by the two men, and that his subsequent hospitalization prevented him from immediately returning to the County.
*1183 When defendant finished his direct testimony, the judge then proceeded to cross examine him about an arrest at a Broward County store on a date when he claimed to be in South Carolina. The State interjected that this arrest was for the two charges that the state had dropped at the start of the hearing. Defendant asserted that he didn't remember being arrested, but the prosecutor stated that defendant was booked in the Broward County Jail on that same day. The judge then asked the prosecutor if he wanted to introduce the booking sheets, whereupon the prosecutor did so. Defendant objected that the booking sheets did not have fingerprints. The judge then ordered that a fingerprint comparison be performed to confirm that defendant was arrested on that day for shoplifting in Broward County. Apparently recognizing that the booking sheets were not admissible to prove charges that had been dropped, the judge stated that this evidence was relevant to defendant's credibility.
After a recess, the State presented evidence that the fingerprints on the booking sheets belonged to defendant. The State argued that the match discredited defendant's testimony and asked the judge to find that defendant had committed a material violation of the conditions of his probation in failing to file the required reports. Defendant protested that he was unable to file reports for January because he was hospitalized in South Carolina and in February because he was in jail. The judge then granted defendant a continuance so that he could introduce the hospital records to prove the dates he was hospitalized. The judge also suggested that the PO file another warrant with the correct dates on which defendant was supposed to have left Broward County. The judge also announced that he would permit the State to rescind its earlier decision dropping two charges and now proceed on the charges of burglary and petit theft.
The hearing was resumed two weeks later but Defendant did not produce the hospital records. The State was permitted to present a videotape and a witness to establish that defendant shoplifted three pairs of shorts from a local store on the critical day. The trial judge then orally announced his decision on the charges, finding defendant guilty of violating his probation by committing petit theft and by failing to file the monthly reports pursuant to the provisions of his probation.[3] We now have the appeal.
We first acknowledge that there is substantial evidence to support a finding of violations of probation. The absence of the filed, written reports is almost self evident, and the booking charges do show that he was arrested for theft. While defendant testified in defense of the charges, he did not directly deny that he had stolen anything so much as he instead sought to establish that the person arrested for the theft could not have been himself because he was in a hospital in South Carolina on the day the goods were taken. Hence the objective evidence does tend to supportat least by inference, anywaya finding of violation in that it establishes that defendant was in fact in Broward County on the crucial day where he was actually arrested for the offense.
But this evidence notwithstanding, we have reluctantly concluded that we are obligated to reverse these VOP findings. We cannot escape a settled feeling that the trial judge went too far in assisting an unprepared state attorney to establish the VOP. Simply stated, the trial judge's conduct crossed the line of ostensible neutrality and impartiality and operated to deny the defendant essential due process by depriving him of the appearance of an unbiased magistrate and an impartial trier of fact.
*1184 The requirement of judicial impartiality is at the core of our system of criminal justice. As our supreme court said in a much quoted and memorable passage:
"This Court is committed to the doctrine that every litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of Courts to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice.
"It is not enough for a judge to assert that he is free from prejudice. His mien and the reflex from his court room speak louder than he can declaim on this point. If he fails through these avenues to reflect justice and square dealing, his usefulness is destroyed. The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies, purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this."
State ex rel. Davis v. Parks, 141 Fla. 516, 519-520, 194 So. 613, 615 (1939).
More recently, in a similar vein, the court elaborated:
"We canonize the courthouse as the temple of justice. There is no more appropriate justification for this than the fact that it is the only place we know where the rich and poor, the good and the vicious, the rake and the rascalin fact every category of social rectitude and social delinquentmay enter its portal with the assurance that they may controvert their differences in calm and dispassionate environment before an impartial judge and have their rights adjudicated in a fair and just manner. Such a pattern for administering justice inspires confidence. The legend on the seal of this court'sat cito si recte' (soon enough if right or just)embossed on the floor in the rotunda of this building, encourages devotion to such a pattern. Litigation guided by it makes the courthouse the temple of justice. When judges permit their emotions or the misapplication of legal principles to shunt them away from it, they must be reversed. The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosecution or defense lest it appear that his neutrality is departing from center. The judge's neutrality should be such that even the defendant will feel that his trial was fair."
Williams v. State, 143 So.2d 484, 488 (Fla. 1962); see also Crosby v. State, 97 So.2d 181 (Fla.1957).
In Chastine v. Broome, 629 So.2d 293 (Fla. 4th DCA 1993), a defendant sought disqualification because during a trial the judge passed a note to the prosecutor offering trial strategy.[4] We found this legally sufficient to disqualify the trial judge. Here the trial strategy was given to the prosecutor orally and without pretense of secrecy. Also the case cannot be distinguished on the basis that Chastine sought disqualification before the decision rather than, as here, on appeal after a conviction. If a judge's lack of partiality is grounds to remove him even before he has decided a case, surely it is more than sufficient to reverse his decision after he has already acted.
*1185 Nor is this case different simply because it was a proceeding to determine whether a defendant has violated probation rather than a trial on a criminal charge. As the supreme court stated in State v. Heath, 343 So.2d 13 (Fla.1977):
A probationer does not enjoy the same status as an ordinary citizen, but even so a probationer is entitled to some but not all due process rights.... [T]hese include the right to preliminary and final revocation hearings under the same conditions provided in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). According to the court, the due process rights to be afforded the probationer in the final hearing include... a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers.
343 So.2d at 15.
We frequently hear lawyers argue that probation revocation proceedings are "informal" and that they do not require punctilious compliance with the formal rules of evidence. And it is true that VOP hearings need not follow the same fastidious formality customarily employed in criminal trials. Nevertheless, the United States Supreme Court has held that the requirement of a neutral factfinder in VOP hearings is an indispensable part of elemental due process of law. Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (at final hearing on VOP charge, minimum requirements of due process include "neutral and detached" decision maker); see also Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The same person simply cannot be both prosecutor and judge just because it is only a VOP hearing and not a full blown criminal trial.
The requisite of a neutral factfinder does not foreclose a judge from asking questions designed to make prior ambiguous testimony clear. But that general ability to clear up the ambiguous is not an invitation to trial judges to supply essential elements in the state's case. As we succinctly said in Merchan v. State, 495 So.2d 855, 856 (Fla. 4th DCA 1986), "the judge may not, in fact, also act as the prosecutor."
With regard to a judge initiating the introduction of evidence, this court has condemned the practice:
"While it is permissible for a trial judge to ask questions deemed necessary to clear up uncertainties as to issues that appear to require it, the trial court departs from a position of neutrality, which is necessary to the proper functioning of the judicial system, when it sua sponte orders the production of evidence that the state itself never sought to offer into evidence." [c.o.]
J.F. v. State, 718 So.2d 251, 252 (Fla. 4th DCA 1998).
The consequence of this departure from the role of apparent neutrality is that defendant must be afforded a new hearing on the alleged violations of probation before a different judge.
REVERSED.
STONE, C.J., and TAYLOR, J., concur.
NOTES
[1] In what we shall describe not indelicately but aptly as substantial violations of the King's English, not to mention American Law English, the state has referred to its voluntary dismissal of charges as "null infoed". One will indeed note multiple corruptions of our language in that lamentable locution.
[2] The PO did not identify who "he" was and did not specifically identify defendant as the person who had committed the alleged violations.
[3] His later written order is inconsistent with his oral findings in that the written order states that defendant was guilty of violating each of the original five allegations. Defendant was sentenced to 30 years as a habitual offender.
[4] In Chastine the note told the prosecutor that it is better sometimes not to cross examine a witness. Here the trial judge told the prosecutor what to ask and what evidence to adduce. These improprieties cannot be distinguished.