889 So.2d 956 (2004)
Valentine SEARS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-479.
District Court of Appeal of Florida, Fifth District.
December 17, 2004.
*957 James B. Gibson, Public Defender, and Thomas J. Lukashow, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
Valentine Sears was found to have violated his probationary placement and was as a result sentenced to prison for two years. He asserts in this appeal of his judgment and sentence that he was denied a fair and impartial violation of probation hearing. Because the trial judge unnecessarily interjected himself into the adversarial process, and abandoned the cloak of neutrality, we conclude that Mr. Sears is entitled to a new hearing before a different judge.
Mr. Sears was originally placed on probation for two years after entering a guilty plea to a charge of felony driving with a cancelled, suspended or revoked license. He violated probation about a year later, and was placed on drug offender probation for the remainder of the term. A few months later he was accused of violating probation again, this time for purportedly committing a domestic battery on his girlfriend.
At the violation of probation hearing, the State called Mr. Sears' girlfriend to testify. Immediately after she was sworn in, the trial court questioned her preliminarily before allowing the State to ask any questions. After the State asked three questions, the trial court interrupted and resumed the questioning as follows:
Court Did he hit you, ma'am?
Witness Not really. I mean 
Court Did he hit you 
Witness Yes.
Court Against your will? How did he hit you?
Witness Just like that (indicating), not hard or anything. I just wanted them to make him leave for that night.
Court What, are the police suppose [sic] to babysit your husband 
Witness No, that's true 
Court or your boyfriend
Witness I understand.
Court Do what?
Witness I understand what you're saying.
Court According to this he committed domestic battery upon you. Do you know what a battery is?
Witness Yes, sir.
Court What is a battery?

*958 Witness When a person does something against your will.
Court Well
Witness Well, hit you or
Court It's bodily contact
Witness Yes, sir.
Court And he struck you, right?
Witness Yes sir.
Court What were you doing that caused him to strike you?
Witness We were arguing, had been arguing all day.
Court What about?
Witness Different things.
Court And he didn't shove you, he just struck you in the back of the head?
Witness Yes.
Court With his hand, or what?
Witness Yeah.
Court And what happened after he struck you?
Witness By that time the police were already there coming up.
Court Well, why didn't you call the police ahead of time, because he wouldn't leave?
Witness Yes, sir.
Court You may inquire. Well, charges got filed on this, didn't they, in county court?
Ass't S.A. I'm sorry I didn't understand you.
Court The State Attorney's office filed criminal charges.
Ass't S.A. You represent him Mr. Gower?
Ass't P.D. Yes sir.
After a brief discussion concerning whether battery charges were pending against Mr. Sears in a separate proceeding, the Court then asked the witness:
What do you want the State to do on the other charges from county court.
When she responded that she wanted the charges dropped, the court replied that:
Well, well, we're not dropping this one. All right, you want to ask any questions, go ahead.
At that point, Mr. Sears' lawyer began a short cross-examination of the witness. The trial judge, however, interrupted again to ask the witness a few more questions that did not appear relevant to the proceeding. Cross examination of the victim continued until Mr. Sears' lawyer asked her if she "got into his (Mr. Sears) face." That question prompted yet another discussion with her by the trial judge.
The questioning of Mr. Sears' girlfriend ended abruptly, and the Probation Director for Sumter County, was called to the stand. After the trial judge asked a few questions of her, Mr. Sears' counsel began his cross examination, and managed to get in three questions. While the Probation Director was testifying, the trial judge inexplicably began to ask Mr. Sears directly some questions about his employment and income. Both Mr. Sears, who had not been sworn in and who was not on the witness stand, and the Probation Director responded to the court's questions. The judge next inquired about Mr. Sears' living arrangements with his girlfriend, and then asked his girlfriend, who was now apparently sitting in the gallery, about the division of living expenses between Mr. Sears and her.
The Probation Director, who was presumably still testifying, did not answer another question. Instead, the trial judge directed yet another series of questions at Mr. Sears, this time specifically involving the alleged criminal offense that was the basis for the violation of probation, even though Mr. Sears had still not been sworn in, had not been called to the stand, and was not advised regarding his right *959 against self incrimination with respect to this separate offense. See Perry v. State, 778 So.2d 1072 (Fla. 5th DCA 2001). At the conclusion of this last series of questions, the trial court abruptly found Mr. Sears guilty of violating his probation, and sentenced him to prison. This appeal followed.
Every criminal defendant is entitled to court proceedings that are presided over with cold neutrality by an impartial judge, particularly when the judge also acts as the finder of fact. See Turner v. State, 745 So.2d 456 (Fla. 4th DCA 1999); McFadden v. State, 732 So.2d 1180 (Fla. 4th DCA 1999). The Florida Supreme Court has advised in this connection that:
This Court is committed to the doctrine that every litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of the Court to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice.
State ex rel. Davis. v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939). The court elaborated on this subject in Williams v. State, saying that:
When judges permit their emotions or the misapplication of legal principles to shunt them away from it, they must be reversed. The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosecution or defense lest it appear that his neutrality is departing from center. The judge's neutrality should be such that even the defendant will feel that his trial was fair.
143 So.2d 484, 488 (Fla.1962).
While a probationer may not enjoy the same status as an ordinary citizen, he or she is entitled to some, although not all, due process rights. See McFadden, 732 So.2d at 1185 (citing State v. Heath, 343 So.2d 13 (Fla.), cert. denied, 434 U.S. 893, 98 S.Ct. 269, 54 L.Ed.2d 179 (1977)). In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court held that the elemental due process rights to be afforded to a person on parole in a violation hearing include "a neutral and detached hearing body." See also Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Certainly a person on probation is entitled to no less.
The requisite for a neutral finder of fact does not foreclose a judge from asking questions designed to make previously received ambiguous testimony clear. See McFadden, 732 So.2d at 1185. Certainly a trial judge should not be compelled to act out of confusion or a misapprehension of the facts. The capacity to clear up ambiguous or confusing testimony, however, is not an invitation to trial judges to supply essential elements in the state's case. Id.
A review of the transcript indicates that the court's questioning of witnesses in the present case went well beyond an attempt to clear up ambiguities. While numbers are not necessarily determinative, we cannot help but notice that the trial judge here asked the victim forty questions, while the prosecutor asked her three. The judge asked the Probation Director six questions, and neither other attorney was offered the chance to examine her. Finally, the court asked Mr. Sears twenty-two questions, even though he was never sworn in and never took the stand. Of course, neither counsel was given a chance *960 to examine him. The trial judge in the present case crossed the line of neutrality and impartiality, and as a result, Mr. Sears did not receive a fair and impartial violation of probation hearing. See Cagle v. State, 821 So.2d 443 (Fla. 2d DCA 2002). Accordingly, we reverse and remand for a new violation of probation hearing before a different judge.
REVERSED and REMANDED.
SHARP, W., and TORPY, JJ., concur.