GERBER, J.
The defendant appeals from the circuit court’s denial of his motion to withdraw plea and his Florida Rule of Criminal Procedure 3.800(b)(2) motion to correct sentence. On the motion to withdraw plea, the defendant argues that the court departed from its neutral role in denying the motion. On the motion to correct sentence, the defendant argues that his sentence exceeded the statutory maximum for the offense to which he pled. We affirm as to both arguments. We write to address only the first argument.
The state charged the defendant with two counts of attempted second degree murder with a weapon. The defendant notified the court that he intended to enter an open no contest plea and move for a downward departure. His change of plea form included the following statements: “I understand the maximum penalty provided by law is: 60 yrs,” and “My guideline recommended range is 142.5 mos — 60 yrs.” The defendant initialed both statements. The defendant’s motion for downward departure stated that a court-appointed psychologist “conducted a comprehensive mental health evaluation and diagnosed [the defendant] with a major mental health disorder requiring treatment.” The motion further stated that treatment was available, and that he would “receive a Certificate of Eligibility for participation in Mental Health court.”
At the change of plea hearing, the court and the defendant engaged in the following colloquy:
COURT: The maximum penalty for each count is 30 years Florida State Prison. The bottom of your guidelines are 142.5 months Florida State Prison and it’s an open plea to the Court. It’s a motion for downward departure and transfer to Mental Health Court. Other than that, has anyone made any promises to you to what would happen here today?
DEFENDANT: (No response.)
COURT: Has anyone promised you anything else?
DEFENDANT: No, ma'am.
*598 COURT: Has anyone forced you in any way or threatened you into this plea?
THE DEFENDANT: No[,] ma'am.
After the colloquy, the defendant entered his no contest plea. The court accepted the plea, noting the defendant had a “certificate of eligibility for Mental Health Court.”
The court later considered the defendant’s downward departure motion. The state indicated that the defendant pled to first degree felonies and was facing a maximum of sixty years imprisonment. When the court asked defense counsel if she had any comment, she replied: “No, Your Honor. My client’s aware of potentials.” The court ultimately denied the downward departure motion. The court then sentenced the defendant to serve, concurrently on each count, fifteen years imprisonment, followed by one year of community control, followed by five years of mental health probation.
A few days later, the defendant, through new counsel, filed a motion to withdraw plea. He argued that his plea was not knowing and voluntary because his former counsel advised him that if he pled open to the court, he would “go to Mental Health Court and not get a prison sentence.” He claimed that without this misadvice, he would not have pled to the charges. He also alleged that he was supposed to undergo a competency evaluation, but the evaluation did not occur before he pled to the charges.
The court set an evidentiary hearing on the motion. The court, on its own, requested the presence of the defendant’s former counsel and the psychologist who performed the defendant’s downward departure evaluation. The defendant did not object to the request.
At the evidentiary hearing, the defendant testified that his former counsel advised him that if he pled to the charges, he would be sentenced to a treatment program. According to the defendant, his former counsel did not advise him that he still could be sentenced to prison.
The state’s cross-examination mostly consisted of a review of the defendant’s plea form and the plea colloquy. The defendant admitted that, at the plea hearing: he initialed his understanding of facing up to sixty years imprisonment;' the court informed him of the minimum and maximum sentences he was facing; and he said he had not been promised anything for his plea nor been forced into his plea.
At the end of the defendant’s testimony, the following exchange occurred:
COURT [to new defense counsel]: Call your next witness.
[NEW DEFENSE COUNSEL]: I have no more witnesses, your Honor.
COURT: State, call your next witness.
[STATE]: I have no witnesses, your Honor.
COURT: What is [the psychologist] here for?
[NEW DEFENSE COUNSEL]: You requested [him] here.
COURT: Okay. [Psychologist], come up. It was me. And [former defense counsel], we don’t need her for anything?
[NEW DEFENSE COUNSEL]: Judge, you requested both of them here.
COURT: All right. I’ll take it from here.
The court then called the psychologist as a witness. Without defense objection, the court asked the psychologist, in pertinent part: “If [the defendant] was not competent, would you have been able to complete [the downward departure] evaluation or would you have noted that in that evaluation?” The psychologist answered that if he had any concern about the defendant’s competency, he would have raised it, and *599 nothing stood out to make him believe the defendant was not competent. New defense counsel cross-examined the psychologist, and the court followed up with one question on redirect. The state did not question the psychologist.
The court next called former defense counsel as a witness. Without defense objection, the court asked former defense counsel: “Did you tell [the defendant] that there was no possibility of him going to prison if he went to mental health court?” Former counsel answered: “I never told [the defendant] that, Judge.” New defense counsel and the state then questioned former defense counsel, with the state’s questions focused solely on the plea sheet and form, and whether the defendant “seem[ed] to understand all the conditions of this plea.” Former defense counsel answered: “He did.”
At the end of the hearing, the court stated:
The motion to vacate plea is denied. The Court finds by review of the transcript that clearly [the defendant] was advised of his rights, of the maximum penalty, of the bottom of the guidelines, that there was no guarantee what was going to happen. It was an open plea and transferred to mental health court.
By his own testimony, he went through the entire plea form and initialed and signed it, and he remembers doing that. He understood that he was advised of the maximum and minimum penalties.
According to [the psychologist], he was clearly competent when he evaluated him. And to say that now, somehow, [former defense counsel] is up here lying and not saying what actually happened, I think is completely uncredible [sic] at this point. I’m sure she did advise him of what the possibilities were of going to mental health court.
(emphasis added).
This appeal followed. The defendant argues that the court departed from its neutral role by: requesting former defense counsel’s presence at the evidentiary hearing; calling former defense counsel as a witness after the state declined to call any witnesses; and eliciting former defense counsel’s testimony upon which the court relied to deny the motion. The state responds that because the defendant did not object to the court’s actions, his argument is not preserved. The defendant’s reply acknowledges the lack of preservation, and argues that the court’s departure from its neutral role amounted to fundamental error.
Based on the foregoing arguments, we have reviewed the record to determine whether the court’s actions amount to fundamental error on the facts of this case. See Abdool v. State, 53 So.3d 208, 220 (Fla.2010) (“[The fundamental error] standard imposes a high burden on the defendant to establish that the error goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.”) (citations and quotations omitted).
We conclude that the court’s actions do not amount to fundamental error on the facts of this case. First, however, we recognize that the court departed from its neutral role. In McFadden v. State, 732 So.2d 1180 (Fla. 4th DCA 1999), we stated:
While it is permissible for a trial judge to ask questions deemed necessary to clear up uncertainties as to issues that appear to require it, the trial court departs from a position of neutrality, which is necessary to the proper functioning of the judicial system, when it sua sponte orders the production of evidence that *600 the state itself never sought to offer into evidence.
Id. at 1185 (citation and quotations omitted). Here, the judge’s actions went beyond asking questions to clear up uncertainties. Instead, the court sua sponte ordered the production of evidence that the state itself never sought to offer into evidence. The court requested former defense counsel’s presence, called former defense counsel as a witness after the state declined to call any witnesses, and elicited former defense counsel’s testimony upon which the court relied in part to deny the motion. Thus, the court departed from its neutral role.
Despite this departure, however, the court’s actions do not rise to the level of fundamental error. The record here conclusively refuted the defendant’s allegations before the court elicited consistent supporting evidence from former defense counsel. As the court found in denying the motion to -withdraw plea:
The Court finds by review of the transcript that clearly [the defendant] was advised of his rights, of the maximum penalty, of the bottom of the guidelines, that there was no guarantee what was going to happen. It was an open plea and transferred to mental health court.
By his own testimony, he went through the entire plea form and initialed and signed it, and he remembers doing that. He understood that he was advised of the maximum and minimum penalties.
Based on those findings alone, the court could have, and should have, denied the defendant’s motion. See Nelfrard v. State, 34 So.3d 221, 223 (Fla. 4th DCA 2010) (“[T]he plea colloquy itself may conclusively refute a defendant’s allegations that counsel misrepresented the length of time the defendant would serve.”); Scheele v. State, 953 So.2d 782, 785 (Fla. 4th DCA 2007) (“A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences.”).
The fact that the court went further by eliciting consistent supporting evidence from former defense counsel does not cause fundamental error on this record. See Mathew v. State, 837 So.2d 1167, 1170 (Fla. 4th DCA 2003) (“[N]ot every act or comment that might be interpreted as demonstrating less than neutrality on the part of the judge will be deemed fundamental error.”); cf. Nichols v. State, 721 So.2d 807, 808 (Fla. 5th DCA 1998) (court’s asking witness to identify the defendant after the prosecutor chose not to did not rise to the level of fundamental error where the defendant: (1) was followed from the scene and kept in view until being arrested; (2) confessed to the crime after being arrested; and (3) raised as his sole defense at trial that he did not remember committing the crime because he was intoxicated when the incident occurred).
We distinguish the cases upon which the defendant relies for the proposition that a court’s departure from its neutral role may amount to fundamental error. In those cases, the trial court’s actions allowed the state to prove its case when it otherwise may not have done so. See Padalla v. State, 895 So.2d 1251, 1252 (Fla. 2d DCA 2005) (trial court questioned the state’s witnesses during a probation revocation hearing without the prosecutor having done so, generating the evidence which the court used to find that the defendant violated his probation); Lee v. State, 789 So.2d 1105, 1106-07 (Fla. 4th DCA 2001) (where the defense was misidentification, the trial court instructed the prosecutor to ask a witness to identify the defendant’s *601 tattoos after the prosecutor had not done so); Lyles v. State, 742 So.2d 842, 842-43 (Fla. 2d DCA 1999) (after the state rested and the defendant’s attorney pointed out the deficiency in the state’s proof, the trial court sua sponte ordered the defendant’s fingerprints and bifurcated the hearing to allow additional testimony benefitting the state); McFadden, 732 So.2d at 1182-83 (after the state failed to establish a prima facie case for a violation of probation, the trial court, among other things, sua sponte identified the state’s omissions, asked the state if it wanted to reopen its case, and after the state’s proof remained insufficient, elicited further evidence upon which it found a violation).
Unlike Padalla, Lee, Lyles, and McFadden, the record here conclusively refuted the defendant’s allegations before the court elicited consistent supporting evidence from former defense counsel. Again, while we disapprove of the court’s actions, we hold that the court’s actions did not rise to fundamental error on this record.
Based on the foregoing, we affirm the denial of the defendant’s motion to withdraw plea. Also, as stated above, we affirm the denial of the defendant’s rule 3.800 motion to correct sentence without further discussion.

Affirmed.

[1]

MAY, C.J., and DAMOORGIAN, J., concur.

. We note that the motion to withdraw plea included statements which arguably raised a question regarding the defendant’s competency. In this respect, the court’s questioning of the psychologist did not constitute fundamental error either. See generally Lane v. State, 388 So.2d 1022, 1025 (Fla.1980) ("The law is now clear that the trial court has the responsibility to conduct a hearing for competency to stand trial whenever it reasonably appears necessary, whether requested or not, to ensure that a defendant meets the standard of competency....").