IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

DEPARTMENT OF CHILDREN
AND FAMILIES AND STATEWIDE
GUARDIAN AD LITEM,

      Appellants,

v.

      Case No. 5D23-0655
      LT Case No. 2022-DP-1107

J.J., FATHER OF E.J., AND C.J., CHILDREN

      Appellee.
_____/

Opinion filed July 24, 2023

Appeal from the Circuit Court
for Brevard County,
John Dean Moxley, Jr., Judge.

Kelley Schaeffer, of Children's Legal
Services, Department of Children and
Families, Bradenton, for Appellant,
Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide
Director of Appeals and Amanda
Victoria Glass, Senior Attorney, of
Guardian ad Litem Program,
Tallahassee, for Appellant, Guardian
ad Litem Program.

No Appearance for Appellee.

WALLIS, J.

The Department of Children and Families ("DCF") and the Statewide Guardian ad Litem ("the GAL") appeal two orders from the trial court, which denied DCF's petitions to adjudicate C.J. and E.J. ("the Children") dependent as to their father, J.J. ("Father"). DCF and the GAL argue that the trial court erred when it refused to assess the credibility of two child witnesses, relied on outdated law when denying the petitions for dependency, and lost judicial neutrality by appearing to be partial to Father. Father did not file an answer brief. We agree with DCF and the GAL. Therefore, we reverse and remand for a new hearing.

**Facts and Proceedings Below**

E.J. and C.J. are Father's biological children. K.H. is E.J.'s mother and S.F. is C.J.'s mother. A.H., an eleven-year-old girl, is E.J.'s half-sister by her mother, K.H., but she is not Father's biological daughter and she is not involved in this dependency case. However, because A.H. was present in Father's and K.H.'s home, she provided testimony at the adjudicatory hearing in this case, which is relevant to this appeal.

In May 2022, DCF received a report that K.H. had fallen asleep in her car while it was running with E.J. in the backseat. When police responded, they determined that K.H. was intoxicated and they arrested her for DUI and child neglect. A subsequent report to DCF revealed that C.J. had witnessed

2

domestic violence between Father and K.H. During DCF's investigation of that report, C.J. revealed that Father and K.H. drank alcohol regularly, which led to verbal and physical altercations. An interview with A.H. confirmed that Father and K.H. fought and Father pushed her on more than one occasion.

As a result of its investigation, DCF filed a shelter petition seeking to shelter the Children. It also filed Petitions for Dependency for the Children pursuant to section 39.01(14)(a), (e), and (f), Florida Statutes. The allegations included: domestic violence in the Children's presence, excessive alcohol use, housing instability, Father's history of violence and substance abuse, and the failure to cooperate with DCF's investigation.

The trial court sheltered the Children, finding probable cause of domestic violence between the parents and that they had substance abuse issues. DCF attempted to conduct a home study on Father, but Father threatened DCF's employees. Thus, a home study for Father was not completed. Both K.H. and S.F. consented to dependency and the Children were adjudicated dependent. However, Father did not consent to dependency. As a result, DCF sought a supplemental adjudication of dependency as to Father under section 39.507(7)(b), Florida Statutes.

After Father's attorney withdrew from the case, Father proceeded pro se. Before the supplemental adjudication hearing, the GAL and DCF

3

requested that the trial court use written questions from the parties to question A.H. and C.J. without the parties being present. They argued that the child witnesses should not be subjected to questioning directly by the pro se Father. The trial court agreed to the procedure requested by DCF and the GAL.

During the hearing, DCF called the child protective investigator and the case manager involved in Father's case. Both of those witnesses described their interactions with Father, which included him being belligerent and making threatening comments. Due to Father's aggressive behavior, neither witness was able to complete a home study on Father. As a result, DCF could not place the Children with Father because, without a home study, it was not clear that doing so would be safe for the Children.

DCF also called A.H. and C.J. to testify. The trial judge used the parties' written questions and he questioned each child separately in a child-friendly room where they could not see Father. During her testimony, A.H. stated that Father has no "humor" and is "mean sometimes." When asked whether she missed Father, A.H. responded "not really."

C.J., who was six years old, testified that Father and K.H. fought and sometimes those fights included hitting. In addition, she had seen her mother, S.F., and Father fight, and their fights involved yelling. C.J. also

4

stated that she knew what alcohol was, Father drank alcohol, and Father became drunk. She described Father as being "normal" after he was "done getting drunk," but every time he "gets drugs, they get crazy again."[1]

Father did not testify. He called K.H., but he did not ask her about domestic violence in the home. Father also called his mother, who testified that she had not witnessed domestic violence or substance abuse in Father's home.

On December 5, 2022, after taking the matter under advisement, the trial court issued its first order on the Petitions for Dependency ("the December 5th Order"). In that order, the court explained that DCF had to show that Father "actually abused or neglected the children." It then described the manner in which A.H. and C.J. were questioned during the hearing, and concluded that that procedure deprived it of the ability to accurately assess the child witnesses' credibility. Accordingly, the trial court concluded as follows:

> While it is true that there was testimony that [Father] was mean, that [Father] drinks and gets crazy and has hit [K.H.] before, the Court was not able to determine the credibility of that testimony. The Court cannot base a decision on testimony that was not and could not be judged for its credibility. Accordingly, a credible basis for the testimony cannot

---

[1] It is unclear whether C.J. meant "drugs" or "drunk" in this answer.

5

> be concluded and, therefore, [DCF] has not proven abuse or neglect by a preponderance of the evidence.

The December 5th Order also found that there was no evidence showing that a home study for Father had been completed. Therefore, the trial court ordered that the parties appear for a new hearing so that it could reconsider the home study issue.

DCF filed a motion for rehearing, arguing that the trial court applied the wrong standard when it required that DCF prove actual harm. It also argued that the trial court erred in refusing to the assess the credibility of the child witnesses when their testimony was uncontroverted and in failing to rule on the allegations related to section 39.01(14)(e).

At the reconvened hearing, DCF asked the trial court under which authority it was proceeding. DCF argued that the adjudicatory hearing had already taken place and all parties had rested their cases. The trial court responded that it was reopening the case based on the "inherent power of the Court."

Thereafter, Father attempted to testify. Ultimately, the trial court questioned Father, during which time he testified that two DCF employees came to his house and asked him questions, took pictures, and gave him a drug test. He also filled out some paperwork and signed some documents.

6

Father acknowledged that he was not fingerprinted during that visit and he never received a paper copy of a home study. However, the DCF employees told him that he would be approved. Later, when DCF inquired whether Father had rested his case, the trial court responded: "Yes."

DCF called a dependency case manager supervisor who was assigned to Father's case. She testified that she reviewed Father's file and she looked in the computer system that held all of the case notes associated with the case. She stated that there were home studies conducted in this case, but there were no home studies for Father.

After DCF presented its evidence, the trial court sua sponte asked Father more questions about the two DCF employees who had visited him. The trial court asked DCF if it wished to subpoena those witnesses. DCF declined to do so. In response, the trial court informed DCF that it was "going to lose without doing that." DCF again declined to subpoena those witnesses.

After hearing DCF's closing argument, the trial court orally denied DCF's Petition for Dependency as to Father and its motion for rehearing from the December 5th Order. On December 19, 2022, the trial court entered an order denying the Petitions for Dependency and the Motion for Rehearing ("the December 19th Order") without elaboration.

7

DCF again moved for rehearing, arguing, *inter alia*, that the trial court erred in sua sponte reconvening the parties after they had rested and had not moved to reopen the evidence. DCF also argued that the trial court violated its due process rights by reopening the case and actively taking part in the litigation by questioning Father. The trial court denied DCF's second motion for rehearing.

DCF and the GAL timely appealed the December 5th Order and the December 19th Order. They raise a number of issues on appeal, three of which merit discussion. We address those arguments below.

**Refusal to Assess Credibility of Child Witnesses**

DCF and the GAL argue that the trial court erred in refusing to assess the credibility of A.H. and C.J. while conducting the in-camera examination. Florida Rule of Juvenile Procedure 8.255(d)(2)(A) provides that "[o]n motion and hearing, the child may be examined by the court outside the presence of other parties as provided by law. The court shall assure that proceedings are recorded, unless otherwise stipulated by the parties."

It is axiomatic that if a trial judge conducts an in-camera examination of a child under this rule, it must assess that child's credibility as part of that examination. Otherwise, the procedure would be pointless. Here, the trial

8

court agreed to examine two child witnesses in camera, but after questioning the witnesses, it erroneously refused to assess their credibility and denied DCF's Petitions for Dependency due to its inability to assess the child witnesses' credibility. This error requires reversal.

In addition, by refusing to assess the child witnesses' credibility, the trial court rejected testimony that was uncontroverted. "[W]here the testimony on the pivotal issues of fact is not contradicted or impeached in any respect, and no conflicting evidence is introduced, these statements of fact can not be wholly disregarded or arbitrarily rejected." Guardian ad Litem Program v. K.H., 276 So. 3d 897, 902 n.2 (Fla. 3d DCA 2019) (quoting Duncanson v. Serv. First, Inc., 157 So. 2d 696, 699 (Fla. 3d DCA 1963)); State v. Fernandez, 526 So. 2d 192, 193 (Fla. 3d DCA 1988).

A.H. and C.J. were the only witnesses who testified about living in Father's home. More specifically, C.J. was the only witness who observed Father arguing with K.H. and S.F., and who testified that those arguments included hitting and yelling. C.J. was also the only witness to describe Father when he drank alcohol and was drunk, which she described as "crazy." No other witnesses contradicted that testimony. Because A.H. and C.J. provided testimony that was not impeached, discredited, contradicted by other witnesses who testified during the hearing, internally inconsistent, or

9

physically impossible, the trial court additionally erred when it refused to accept the evidence as true.  See K.H., 276 So. 3d at 902 n.2; Fernandez, 526 So. 2d at 193.  This error also requires reversal.

**The Trial Judge's Reliance on Outdated Law**

DCF and the GAL additionally argue that the trial court relied on outdated law when it required that DCF prove "actual harm" or "actual abuse" by Father to prove the allegations in the Petitions for Dependency.  We agree.

After a petition for dependency is filed, an adjudicatory hearing shall be held as soon as practicable. § 39.507(1)(a), Fla. Stat. (2022). "For as long as a court maintains jurisdiction over a dependency case, only one order adjudicating each child in the case dependent shall be entered." § 39.507(7)(a), Fla. Stat. That "order establishes the legal status of the child for purposes of proceedings under this chapter and may be based on the conduct of one parent, both parents, or a legal custodian." § 39.507(7)(a), Fla. Stat. When a court has determined that a child is dependent as to one parent and a second parent has been served and brought into the proceeding, section 39.507(7)(b), Florida Statutes (2022), applies. That statute provides, in relevant part:

10

> If a second parent is served and brought into the proceeding after the adjudication and if an evidentiary hearing for the second parent is conducted, the court shall supplement the adjudicatory order, disposition order, and the case plan, as necessary. **The petitioner is not required to prove actual harm or actual abuse by the second parent in order for the court to make supplemental findings regarding the conduct of the second parent.**

§ 39.507(7)(b), Fla. Stat. (emphasis added).

In the December 5th Order, the trial court stated that DCF must show that Father "actually abused or neglected the children." As support for this statement, the trial court cited to J.L. v. Department of Children & Families, 87 So. 3d 54 (Fla. 5th DCA 2012).

However, in 2017, section 39.507(7)(b) was amended to specifically state that the "petitioner is not required to prove actual harm or actual abuse by the second parent in order for the court to make supplemental findings regarding the conduct of the second parent." Ch. 2017-151, § 10, Laws of Fla.; see In Interest of E.T., 268 So. 3d 821, 825–26 (Fla. 2d DCA 2019) (discussing 2017 amendment to section 39.507(7)(b) and explaining that DCF is not required to prove actual harm or actual abuse in order for the court to make supplemental findings regarding the conduct of the second parent).

11

It is clear from the plain language of section 39.507(7)(b) that, after 2017, DCF is not required to prove actual harm or actual abuse in order to obtain a supplemental adjudication of dependency against a second parent. Thus, the trial court erred in relying on J.L. and in requiring that DCF prove actual harm or actual abuse. Consequently, because the trial court applied an incorrect legal standard when it entered the December 5th Order, we reverse and remand for a new hearing so that the trial court can reconsider its decision and apply the correct standard. See Thompson v. Douds, 852 So. 2d 299, 305 (Fla. 2d DCA 2003) ("Usually when a trial court applies the incorrect legal standard, we reverse and remand for a new hearing at which the trial court must reconsider its decision in light of the proper legal standard.").

### The Trial Judge's Lack of Neutrality

DCF and the GAL also argue that the trial judge gave the appearance of partiality when it reopened the adjudicatory hearing after the parties had rested for the express purpose of allowing additional testimony on the home study issue. They further argue that the trial judge overstepped the bounds of impartiality when he became overly involved in the hearing.

A trial judge is prohibited "from stepping away from the appearance of neutrality to become an advocate for either party." Evans v. State, 831 So.

12

2d 808, 811 (Fla. 4th DCA 2002). However, the rule that a trial judge remain neutral does not prohibit "a judge from asking questions designed to make previously received ambiguous testimony clear." Sears v. State, 889 So. 2d 956, 959 (Fla. 5th DCA 2004). Although a trial judge is permitted to ask questions to clarify ambiguities, he departs from a position of neutrality when he supplies essential elements in a parties' case and when he "sua sponte orders the production of evidence" that a party never sought to offer. McFadden v. State, 732 So. 2d 1180, 1185 (Fla. 4th DCA 1999) (quoting J.F. v. State, 718 So. 2d 251, 252 (Fla. 4th DCA 1998)). A trial judge's failure to remain neutral during a proceeding is a due process violation that requires reversal. Sparks v. State, 740 So. 2d 33, 36 (Fla. 1st DCA 1999).

In this case, two witnesses provided uncontroverted evidence that they were unable to perform home studies on Father because of his belligerent and threatening behavior toward them. However, in the December 5th Order, the trial judge appeared to imply that DCF was responsible for failing to conduct a home study and then it sua sponte reopened the adjudicatory hearing to consider whether there was evidence of a home study on Father. Neither party requested that he do so and DCF questioned the basis for the trial court reopening the hearing at the reconvened hearing. As DCF and the GAL argue, the trial judge's decision to allow Father an opportunity to present

13

evidence on the home study issue gave the appearance of partiality in favor of Father and deprived DCF of its right to a neutral judge. See In re T.W., 846 So. 2d 581, 582 (Fla. 2d DCA 2003) (explaining that "the trial judge gave the appearance of partiality by sua sponte reopening the case after all parties had rested and he had commented that the trial was concluded," which deprived the parents of their right to an impartial magistrate).

The trial judge additionally erred by failing to remain neutral at the reconvened hearing. The trial judge's actions at the reconvened hearing went far beyond asking questions to clarify ambiguous testimony. Instead, the trial judge conducted Father's entire direct examination and rested Father's case, thereby essentially acting as his attorney. The trial judge's comments to DCF also suggested that he had already determined the outcome of the case before the close of the evidence. Thus, the trial judge's collective actions of reopening the evidence and actively participating in the reconvened hearing gave the appearance of partiality in favor of Father, which violated DCF's due process rights. See Sparks, 740 So. 2d at 37 (reversing where trial judge failed to remain neutral and assumed the role of prosecutor); McFadden, 732 So. 2d at 1183 ("Simply stated, the trial judge's conduct crossed the line of ostensible neutrality and impartiality and operated to deny the defendant essential due process by depriving him of

14

the appearance of an unbiased magistrate and an impartial trier of fact.");

see also Dep't of Child. & Fams. v. B.Y., 260 So. 3d 438, 439–40 (Fla. 5th

DCA 2018) (recognizing that procedures in dependency cases must comply

with due process principles and the trial court's actions violated DCF's and

the child's due process rights).  The cumulative effect of the court's actions

below demonstrates error that requires reversal and remand for a new

adjudicatory hearing before a different judge.  See In re T.W., 846 So. 2d at

582.

**Conclusion**

In conclusion, the trial court committed a number of errors below.

Therefore, we reverse the orders denying the Petitions for Dependency and

remand for a new hearing in front of a different judge.[2]

REVERSED AND REMANDED WITH INSTRUCTIONS.

BOATWRIGHT and MACIVER, JJ., concur.

---

[2] We also agree with DCF and the GAL that the trial court erred when it failed to determine whether a home study had been completed for Father. On remand, the trial court must make findings of fact related to that issue.

15