WOLF, J.
Appellant raises four issues in this appeal from an order revoking his probation and resentencing him to a term of imprisonment, only one of which merits discussion. Appellant argues that the trial court committed reversible error by sua sponte directing the state to produce three additional witnesses at a continuation of the violation of probation hearing after both parties had already rested their cases. We disagree and affirm.
Appellant entered a negotiated plea to a charge of lewd and lascivious activity (in the form of sexual battery) on a child under 16 years of age in exchange for a sentence of only four years’ probation. The trial court accepted appellant’s negotiated plea, adjudicated him guilty of the charged offense, and sentenced him in accordance with the plea agreement to four years of sex offender probation. Condition 11 of appellant’s probation required appellant to “have no direct or indirect contact with the victim.” Condition 19 of his probation required him to “have no unsupervised contact with a child under the age of 18, without another adult present who is responsible for the child’s welfare [and] has been advised of the crime ... except for your own child.”
A little over three months after his probation had been imposed, appellant’s probation officer filed an affidavit charging appellant with having violated conditions 11 and 19 of his probation. The affidavit alleged that appellant had violated conditions 11 and 19 of his probation on September 7, 1999, by sitting at a table at the Nunez University Sports Grill with several teenage girls under the age of 18 years, including the victim. The affidavit further alleged that appellant had violated condition 19 of his probation on September 8, 1999, by being in an unsupervised situation with two teenage girls under the age of 18 years at the apartment residence of a boy who was a boyfriend of one of the girls.
The trial court began the violation of probation hearing on December 17, 1999. The state’s case included testimony from two witnesses who stated that they had personally witnessed appellant at the Sports Grill with underage girls on the night of September 7, 1999. While the court also heard evidence from the state concerning the alleged incident at the apartment on September 8, 1999, this evidence consisted entirely of hearsay testimony.
As part of his case, appellant presented testimony from his mother who stated that appellant had been at work at the Maxwell House plant at the time of the alleged incident at the Sports Grill. During the mother’s testimony, defense counsel attempted to introduce into evidence appellant’s time sheets from Maxwell House for the days in question, but the trial court *517 ruled that it would not allow the documents into evidence until they had been properly authenticated.
At the conclusion of the mother’s testimony, defense counsel attempted to call another witness, but the trial court stated that it wanted to continue the hearing. The trial court indicated that the “issue about the time sheets is too important to not have the custodian of records authenticate the record.” The trial court, therefore, continued the hearing until January 6, 2000.
At the continuation of the hearing, the court heard defense testimony from the custodian of the personnel records at the Maxwell House plant. The computer-generated time records indicated that appellant had been paid for being at work during the time he was alleged to have been with the underage girls on the dates in question. A coworker also testified on behalf of the defense that appellant had been at work on the days in question, but this witness indicated that he had not seen appellant the whole time during these shifts. Appellant and his girlfriend also testified that appellant had been at work at the time of the alleged incidents.
After both parties announced rest, the trial court had an unrecorded bench conference with counsel. At the conclusion of the bench conference, the trial court made the following announcement:
I have indicated to counsel at the side bar here that I want to try and get to the truth of this matter. And there certainly are very different stories that at this point I’m unable to resolve without hearing from several more witnesses.
And I certainly do not want to violate [appellant’s] probation if it is not warranted. On the other hand, if it is warranted, then I would have no hesitation in violating his probation and sentencing him accordingly.
We have some information at this time that is no more than hearsay, and I want to try and get it right from- the horse’s mouth, so to speak.
So we’re going to pass this case for one more week. That will be ... January 13th, at 1:00. And I expect to hear from [the victim and two specifically identified teenage girls] at that time.
Defense counsel objected to the continuance, but the trial court nonetheless concluded the hearing for the day.
At the continuation of the hearing, two of the juvenile girls identified by the trial court testified that they had been at one of the girl’s boyfriend’s apartment with appellant without any adult supervision on September 8, 1999. A third juvenile girl, not identified by the trial court, then testified that she had been one of the underage females at the Sports Bar with appellant on September 8, 1999. She testified that appellant had shown up at the restaurant that night around 8:00 or 9:00 p.m. She further testified that appellant had told her he had come from work and had not had to clock out in order to come there to be with them. This witness testified that appellant had sat at the same table with her and some other girls, including the victim, for about an hour. This witness further testified that no other adults had been present.
After hearing argument from counsel, the trial court made the following finding:
The court has bent over backward in this case to give both sides a fair hearing, to not rule until all of the testimony is in and not rule on what I felt was inadequate testimony. I have now heard additional testimony. I will find at the time that [appellant] is in willful and substantial violation of the terms and conditions of his probation; specifically conditions 11 and 19.
Appellant asserts that the judge’s actions in this case deprived him of a neutral tribunal and argues that reversal is required under J.F. v. State, 718 So.2d 251 (Fla. 4th DCA 1998), Sparks v. State, 740 So.2d 33 (Fla. 1st DCA), rev. denied, 741 *518 So.2d 1137 (Fla.1999), and Lyles v. State, 742 So.2d 842 (Fla. 2d DCA 1999).
In Sparks, this court held that the trial court judge had committed reversible error when she coached the prosecution during an unrecorded bench conference as to how it should further cross-examine the defendant, after the prosecutor had already announced in the presence of the jury that he had no further cross-examination questions for the defendant. See Sparks, 740 So.2d at 34-37. This court held that in so doing the trial court judge had ceased being a neutral magistrate and had instead assumed the role of prosecutor. See id. at 37. In J.F., a juvenile delinquency case, the trial court had directed the prosecution to obtain and present crucial fingerprint evidence which the state had not previously indicated it wished to submit into evidence. See J.F., 718 So.2d at 252. On appeal, the fourth district held that the trial court in that case had, through its actions, crossed the line and become an arm of the prosecution. See id.
While the second district in Lyles held that a trial court had similarly crossed the line between neutral arbiter and prosecutor by directing the state in a violation of probation hearing to reopen its case and present additional determinative evidence, see Lyles, 742 So.2d at 843, we conclude that the trial court’s actions in that case, and in the fourth district’s case of McFadden v. State, 732 So.2d 1180 (Fla. 4th DCA 1999), relied on by the court in Lyles, were materially different from the trial court’s actions in appellant’s case. In Lyles, the trial court had directed the state to reopen its case and present crucial determinative evidence only after defense counsel had pointed out that the state had, up to that point, failed to present sufficient evidence to support the violation charges at issue. See Lyles, 742 So.2d at 842. In McFadden, the trial court had essentially conducted the prosecution’s case against the defendant during a violation of probation hearing after defense counsel had pointed out that the state had failed to present sufficient evidence to support a finding of a violation. See id. at 1182-83.
In reversing the trial court’s finding of a violation in McFadden, the fourth district noted the principle, also set forth in J.F., that a neutral fact finder may, in fact, seek additional information in order to clear up prior ambiguities or uncertainties in testimony previously presented. See id. at 1185 (quoting J.F.). The courts in McFadden, Lyles, and J.F. merely held that the trial court judges’ action in those cases had gone beyond simply seeking additional information to clear up ambiguities and instead had constituted assistance to the prosecution. The trial court’s actions in appellant’s case, however, did not cross the line and were, in fact, nothing more than the actions of a neutral fact finder attempting to resolve conflicts in the testimony presented. See Turner v. State, 745 So.2d 456 (Fla. 4th DCA 1999)(distinguish-ing McFadden and J.F. and holding that a trial court’s questioning of a probation officer and the defendant during a revocation hearing did not amount to reversible error where the judge had merely been clarifying certain issues not fully established during the parties’ examination of these witnesses).
In appellant’s case, there was conflicting testimony as to whether appellant had committed a violation of his probation, but there was also sufficient evidence presented during the state’s initial presentation of its case to support a finding of a violation. The trial court judge also had no idea how the requested witnesses would testify and merely identified these witnesses as individuals he wanted to hear from as part of his search for the truth. Finally, the trial court’s neutrality in requesting testimony from the three identified witnesses was shown by the fact that the court had, at that point in the proceedings, already directed a continuance in order to provide the defense with the opportunity to present evidence favorable to appellant’s position. On these facts, we cannot conclude *519 that the trial court’s requesting of additional information from the specified witnesses constituted reversible error. We, therefore, affirm.
DAVIS and BROWNING, JJ., concur.