# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-5652

_____

MICHAEL RYAN BAUGH,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Mark Borello, Judge.

August 24, 2018

PER CURIAM.

Following a jury trial, Michael Baugh was convicted of burglary of a dwelling, a second-degree felony. The court sentenced him to twenty years as a habitual felony offender ("HFO") with a fifteen-year mandatory minimum sentence as a prison releasee reoffender ("PRR"). At issue in this appeal is the trial court's decision to sentence Baugh to twenty years in prison as an HFO.

At the outset of the sentencing hearing, the State informed the court that it intended to proceed with its previously-filed notices to classify Baugh as both a PRR and an HFO under sections 775.082(9) and 775.084(1)(a), Florida Statutes (2015). Baugh stipulated to the evidence introduced by the State in support of

these classifications, and the court found that he met the criteria to be sentenced accordingly.

The defense called Baugh's father, sister, and grandmother to provide mitigating testimony. These character witnesses described Baugh as a good person who made bad choices due to a substance abuse problem for which he needed help. The mitigation evidence concluded with Baugh's testimony expressing remorse and thanking his family for standing by him.

The prosecutor noted for the record that the victim had indicated she wanted to be present for sentencing, but the prosecutor was unable to get in touch with her about the hearing date, despite leaving voice messages. When asked by the court whether the State was comfortable that it had satisfied its constitutional obligation to notify the victim of the sentencing proceeding, the prosecutor answered affirmatively.

Defense counsel requested that Baugh receive only the mandatory PRR sentence of fifteen years. The State then withdrew its notice of HFO classification and requested the same fifteen-year sentence. After an unrecorded bench conference with counsel, the court continued the sentencing hearing to give the victim an opportunity to appear. Neither party objected to the continuance.

At the continuation of the sentencing hearing, the prosecutor informed the court that she was able to reach the victim, but the victim was unable to attend the hearing because she could not miss any more work. Without defense objection, the prosecutor read an email from the victim explaining how the crime had impacted the victim's life. The email stated that when the victim discovered her home had been broken into, she was "not only afraid for her life but for [her] children as well." She was terrified by the knowledge of an unwelcome stranger entering her home and felt as though she had been "robbed of her security." She had to move to a different property with her mother because she no longer felt safe in her home. She requested that the judge impose the maximum sentence.

The State reasserted its intent to seek HFO sentencing. The defense again urged the court to impose only the fifteen-year mandatory minimum, emphasizing that Baugh had accepted

2

responsibility for his actions. The court proceeded to sentence Baugh to twenty years in prison as an HFO, with a fifteen-year mandatory minimum sentence as a PRR.

Baugh raises two issues in this appeal. In the first issue, he argues the HFO portion of his sentence must be reversed because the court abandoned neutrality by sua sponte continuing the sentencing hearing after the State withdrew its notice of HFO classification and requested the mandatory fifteen-year PRR term. He contends the court, which lacked any discretion in sentencing at that point, could not maintain neutrality while prompting the State to locate the victim.

Because Baugh did not object to the continuance of the sentencing hearing, we review this issue for fundamental error. § 924.051(3), Fla. Stat. (2015); *Sparks v. State*, 740 So. 2d 33, 35 (Fla. 1st DCA 1999) ("Fundamental error has been defined as error that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process.").

Fundamental error can occur when a trial court abandons neutrality. *See Smith v. State*, 205 So. 3d 820, 821 (Fla. 2d DCA 2016) (finding fundamental error where trial court called its own fact witness who provided substantial portion of testimony against defendant). "While a trial court may ask relevant questions of witnesses at a hearing, the court commits fundamental error when it assumes the role of prosecutor and introduces its own evidence." *Id.* A court abandons its neutral role and commits fundamental error by sua sponte prompting the prosecution to present evidence or take certain actions that allow the State to prove its case when it otherwise may not have done so. *See Sparks*, 740 So. 2d at 37 ("[T]he trial court judge crossed the line from neutral magistrate to advocate by directing the prosecutor's attention to evidence on the core issue of the credibility of the defendant."); *Lyles v. State*, 742 So. 2d 842, 843 (Fla. 2d DCA 1999) (finding fundamental error where trial court sua sponte ordered defendant's fingerprints to be taken to satisfy a "deficiency in the State's proof").

Though courts must remain neutral, a court does not necessarily abandon neutrality by acting on its own, even if the action ultimately benefits one of the parties. In *Kirkpatrick v. State*, the trial court sua sponte continued a probation revocation

3

hearing over defense objection to hear from three additional witnesses regarding the defendant's alleged violation. 769 So. 2d 515, 517 (Fla. 1st DCA 2000). After considering the additional testimony, the court found that the defendant violated his probation. *Id.* On appeal, we rejected the defendant's argument that the court abandoned its neutral role and deprived the defendant of a fair and impartial trial. *Id.* at 518. We explained that although the testimony was conflicting, there was sufficient evidence presented during the State's initial presentation of its case to support a finding of a violation. Additionally, the trial judge "had no idea how the requested witnesses would testify and merely identified these witnesses as individuals he wanted to hear from as part of his search for the truth." *Id.* We concluded, "the trial court's actions . . . did not cross the line and were, in fact, nothing more than the actions of a neutral fact finder attempting to resolve conflicts in the testimony presented." *Id.*

Here, too, we do not believe the court crossed the line between neutral arbiter and prosecutor by continuing the sentencing hearing to give the victim another opportunity to be heard. The court, after all, was informed at the initial sentencing hearing that the victim wanted to be present, but she could not be reached. Our state constitution establishes that a victim's rights include the rights to be present "and to be heard when relevant" during "all crucial stages of criminal proceedings." Art. I, § 16(b), Fla. Const. The legislature further instructs that the sentencing court must permit the victim of the crime to "[a]ppear before the sentencing court for the purpose of making a statement under oath for the record." § 921.143(1)(a), Fla. Stat. (2015).

Like in *Kirkpatrick*, the court in this case had no way of knowing what the victim would say or whether she would provide any statement at all. Nor could the victim's statement have any impact on Baugh's HFO status, as he stipulated to that classification and was habitualized at the initial sentencing hearing. Thus, even assuming the court departed from its neutral role, its actions did not rise to the level of fundamental error. *See Valley v. State*, 105 So. 3d 596, 600 (Fla. 4th DCA 2013) (declining to find fundamental error where there was sufficient evidence to support trial court's ruling without the evidence obtained as a result of court's departure from neutrality); *Mathew v. State*, 837

4

So. 2d 1167, 1170 (Fla. 4th DCA 2003) ("[N]ot every act or comment that might be interpreted as demonstrating less than neutrality on the part of the judge will be deemed fundamental error.").

In Baugh's second issue, he contends the trial court fundamentally erred by relying on the victim's unsworn statement in fashioning his sentence. He points to this Court's decision in *Patterson v. State*, which held that section 921.143, Florida Statutes (2016),[*] bars the admission of an unsworn victim impact statement in a sentencing hearing. 994 So. 2d 428 (Fla. 1st DCA 2008). *But see Dickie v. State*, 216 So. 3d 35 (Fla. 2d DCA 2017) (certifying conflict with *Patterson*).

*Patterson* involved a claim of ineffective assistance of trial counsel for failing to object to the introduction of an unsworn statement from the victim's family member at the sentencing hearing. 994 So. 2d at 429. In a short opinion, we construed section

---

[*] Section 921.143 provides in pertinent part as follows:

(1) At the sentencing hearing, and prior to the imposition of sentence upon any defendant who has been convicted of any felony or who has pleaded guilty or nolo contendere to any crime, including a criminal violation of a provision of chapter 316, the sentencing court shall permit the victim of the crime for which the defendant is being sentenced, the victim's parent or guardian if the victim is a minor, the lawful representative of the victim or of the victim's parent or guardian if the victim is a minor, or the next of kin of the victim if the victim has died from causes related to the crime, to:

(a) Appear before the sentencing court for the purpose of making a statement under oath for the record; and

(b) Submit a written statement under oath to the office of the state attorney, which statement shall be filed with the sentencing court.

921.143 to require that written statements from victims or their families be made under oath in order to be considered by the sentencing court. *Id.* In that case, because it was "apparent that the sentencing judge relied on the erroneously admitted evidence when imposing appellant's sentence," we reversed the summary denial of the claim and remanded for an evidentiary hearing. *Id.*

Based on *Patterson*, the trial court erred in accepting the victim's unsworn statement in this case. However, the error did not rise to the level of fundamental error. Unlike the facts in *Patterson*, it is not apparent from the record that the court relied on the victim's unsworn statement in sentencing Baugh to twenty years in prison, rather than the fifteen years mandated by the PRR statute. The State did not argue for an enhanced sentence based on the victim's statement, nor did the court give any indication that it was influenced by the statement. Additionally, the twenty-year sentence was well within the court's discretion to impose and far less than the maximum of thirty years allowed by the sentencing statute and recommended by the victim.

To the extent Baugh argues the court committed fundamental error by depriving him of his rights to confrontation under section 775.084(3)(a)3., Florida Statutes, that argument is without merit. Section 775.084(3)(a) provides that in a proceeding to "determine if the defendant is a habitual felony offender . . . all evidence presented shall be presented in open court with full rights of confrontation, cross-examination, and representation by counsel." As discussed above, the victim's unsworn statement had no bearing on the court's determination of Baugh's HFO status. The court adjudicated Baugh as an HFO at the beginning of the initial sentencing hearing in full compliance with the statute and with Baugh's stipulation that he satisfied the conditions for habitualization.

AFFIRMED.

B.L. THOMAS, C.J., and WOLF and RAY, JJ., concur.

6

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Andy Thomas, Public Defender, and Barbara J. Busharis, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Daniel Krumbholz, Assistant Attorney General, Tallahassee, for Appellee.