DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTHONY CHAS PARR,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-4228

[May 23, 2018]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Lawrence M. Mirman, Judge; L.T. Case No. 43201lCF001175CFAXMX.

Carey Haughwout, Public Defender, and Erika Follmer, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Allen R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant pled guilty to a violation of probation imposed after his convictions for two counts of dealing in stolen property and two counts of giving false ownership or identification information to a secondhand dealer. The trial court sentenced him to fifteen years concurrent on each of the counts for dealing in stolen property and to five year concurrent sentences for the remaining charges. We reverse the sentences because the trial court departed from a position of neutrality in the sentencing proceeding. Appellant also contends that in sentencing him the court erred in considering juvenile dispositions more than five years old, which were included on his scoresheet. We disagree, as prior convictions may be considered, even though they cannot be scored for purposes of determining the lowest permissible sentence under the Criminal Punishment Code. We remand for resentencing before another judge.

In 2011, appellant was charged by information with two counts of dealing in stolen property and two counts of giving false ownership or identification information to a secondhand dealer. Appellant pled to the

charges and was adjudicated guilty. He was sentenced to three years in prison for all counts, followed by two years of probation, and was ordered to pay restitution.

Appellant's probation was set to expire in July 2016. However, in November 2015, appellant's probation officer filed a probation violation report for violations including: failure to report to his probation officer; change of residence without consent; and failure to pay restitution and other costs. The officer alleged that appellant absconded and that his whereabouts were unknown. In the addendum to the violation report, new charges were added, including leaving his county of residence without permission and being arrested for possession of heroin.

In November 2016, the trial court held an initial hearing on appellant's VOP. The prosecutor told the judge that plea offers had been made but were now revoked. After appellant rejected an offer of an eight year cap, the State offered appellant a straight eight year prison term, but appellant rejected that offer as well. Appellant told the court that he thought the eight year cap offer was still open, partially because of his change of attorneys due to his dissatisfaction with his first attorney. The court then questioned appellant about the two offers. While appellant said he would take the eight year cap today, the court was not inclined to accept a capped sentence. The court asked appellant whether he would take the straight eight years. After discussing it with his attorney, appellant rejected the court's offer.

At a subsequent hearing, appellant entered an open plea, admitting the violations, except the possession of heroin charge which the State dropped. The court stated that based on the underlying offenses and appellant's scoresheet, appellant faced a sentence between 13.2 months and forty years in prison.

The court reviewed appellant's sentencing scoresheet which included numerous juvenile dispositions, all of which were more than five years old. Appellant then testified, stating that he was homeless and turned himself in after the VOP warrant was issued. Appellant testified that he wished to receive treatment, and if released on probation, he would live with his grandfather. He stated that the victims of "[e]very case [he] ever had" were his family. The prosecutor cross-examined him on his record, listing various charges. Appellant could not remember whether all the juvenile charges were against family members.

Defense counsel then called appellant's grandfather to testify. The grandfather stated that appellant's family did not want him to go back to

2

jail.  The *court,* not the prosecutor, asked the grandfather if appellant was a danger to the community, and he responded, "Absolutely not."

The court began to question the grandfather about appellant's juvenile and adult criminal record.  Appellant's juvenile dispositions included burglary of a dwelling, grand theft of a vehicle, forgery, assault, and improper exhibition of a weapon.  The court commented on appellant's two burglaries of a dwelling, juvenile dispositions, and the grandfather and appellant responded that those incidents occurred at appellant's mother's house.  Appellant told the court that the grand theft of a vehicle charge was from when he was a juvenile.  The court stated, "It counts though, correct.  Whose car did he steal?"  The grandfather and appellant admitted that appellant took the grandfather's van.  The court then asked about the juvenile forgery disposition, and the grandfather responded that appellant took his checks.  The court asked about two other grand theft charges, adult offenses, but the grandfather told the court that he did not know about those offenses.  The following exchange took place:

> THE COURT: Two other - two other grand thefts, are you familiar with those?
> GRANDFATHER: You'll have to tell me what they are.
> THE COURT: I don't know, I'm asking you.  Do you know what they are?
> THE DEFENDANT: I don't - one was - one was –
> THE COURT: I'm not asking you, I'm asking [your Grandfather].
> GRANDFATHER: Sir, I don't know.
> THE COURT: Cause you're coming into my courtroom and you're saying he's not a danger to anyone else.
> GRANDFATHER: I - I don't think -
> THE COURT: He's never victimized anybody else?
> GRANDFATHER: No, not that I know of.
> THE COURT: Not that you know of.
> GRANDFATHER: Uh-huh.
> THE COURT: Is your lack of knowledge intentional or accidental in that regard?
> GRANDFATHER: My lack of knowledge is because -
> THE COURT: Are you keeping your head in the sand -
> GRANDFATHER: I have no knowledge of that.
> THE COURT: As far as whether he's violated anyone else's rights?
> GRANDFATHER: I do not know that he has.
> THE COURT: Okay.  But is that intentional on your part or are you just accidental - are you - are you -

GRANDFATHER: That's the way I feel.

THE COURT: Did you inquire of him in that regard?

GRANDFATHER: That's -

THE COURT: Have you looked into it?

GRANDFATHER: Uh, not intentionally look into it.

THE COURT: Because you just told me he's not a threat to anybody else.

GRANDFATHER: I do not believe him to be a threat to anyone.

THE COURT: Okay. Because you don't know if he's - he's violated anyone else's rights.

GRANDFATHER: Not - it has not come to my attention that he has.

THE COURT: How about assault?

GRANDFATHER: No.

THE COURT: Improper exhibition of a weapon?

GRANDFATHER: No.

THE COURT: That is no, you don't know anything about it.

GRANDFATHER: He's not done that.

THE DEFENDANT: No, it's -

THE COURT: It's on his record. I'm looking at his scoresheet.

GRANDFATHER: A gun?

THE COURT: I'm looking at his scoresheet. It's on his record.

GRANDFATHER: I don't know anything about a gun. I have guns, but I don't know that -

THE COURT: I don't know that it's a gun -

GRANDFATHER: He's every had any -

THE COURT: It says weapon, it doesn't mean it's a gun. Resisting a merchant, you're not a merchant, are you?

GRANDFATHER: No sir.

THE COURT: Resisting an officer without violence, are you aware of that?

GRANDFATHER: No sir.

THE COURT: Driving while license suspended, theft - another theft charge. You've told me you don't know of any other victims other than your family.

GRANDFATHER: That's correct.

THE COURT: Okay. And he's violated your family's rights because of what, a drug problem?

GRANDFATHER: No, I don't know that he's ever been on drugs.

THE COURT: So you don't know what motivates him to do these things?

GRANDFATHER: I think he just thought he could get away it and, uh -

4

THE COURT: So but what - what -

GRANDFATHER: It was proven not so.

THE COURT: We know in our - in the world that we live in, people do things for different reasons. Most criminals have drug problems and they violate people's rights, they steal from them to get money to get drugs or to buy whatever they want. How do you - who is he - what does - what does he do? How is it - he just violates the rights of people in your family? Does he hate all of you? What - what's the situation? I don't get it.

GRANDFATHER: I just thought it was - I think he thought it was an easy way to get things so he could, uh, prepare or to provide for himself.

THE COURT: And he limits it to your family in that –

GRANDFATHER: The occasions when he's done that have been limited to myself, uh, my live-in girlfriend and - and his mother.

THE COURT: All right. Those are the only questions I have. Does the State have any additional questions?

The State then asked the grandfather only one question - whether appellant attempted to check into rehab when he learned that he violated his probation, as appellant testified earlier in the hearing. The grandfather stated that he was not aware of that. He testified that he hoped that appellant could come home, to which the court replied, "So he can steal from you and burglarize and commit grand theft against you?"

After presentation of the evidence, the State argued for a twelve year sentence, noting his criminal conduct commenced in 2000 as a juvenile and continued through 2012. Appellant sought a sentence of six years. The court terminated appellant's probation, and sentenced him to concurrent sentences of fifteen years for the two counts of dealing in stolen property and five years for the two counts of giving false identification information to a secondhand dealer.

Appellant filed a notice of appeal of his sentence. After filing his notice, he filed a rule 3.800(b)(2) motion to correct his sentence, arguing that his juvenile dispositions should not have been included on his scoresheet because they occurred over five years before his primary offenses and that his sentence violated due process and the Eighth Amendment. The court denied this motion.

Appellant argues that the court violated his rights by departing from a position of neutrality in the sentencing process. A court commits fundamental error by abandoning its neutral role and assuming the role

5

of the prosecutor in a criminal prosecution. *See Cagle v. State*, 821 So. 2d 443, 444 (Fla. 2d DCA 2002). In *Cagle*, which involved a probation revocation proceeding, the court explained:

> A trial court may conduct probation revocation proceedings in an informal manner and it may question witnesses, but it may not assume the role of the prosecutor. *Edwards v. State*, 807 So. 2d 762, 763 (Fla. 2d DCA 2002). Doing so deprives the defendant of the fair and impartial tribunal which is the cornerstone of due process. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). Such conduct amounts to fundamental error that may be raised for the first time on appeal. *See Sparks v. State*, 740 So. 2d 33 (Fla. 1st DCA 1999).

*Id.* This principle also applies to a sentencing proceeding. *See Smith v. State*, 205 So. 3d 820, 821 (Fla. 2d DCA 2016).

In *Sears v. State*, 889 So. 2d 956, 959 (Fla. 5th DCA 2004), in a probation proceeding, the appellate court reversed because the trial court strayed too far from a position of neutrality. The court said:

> The requisite for a neutral finder of fact does not foreclose a judge from asking questions designed to make previously received ambiguous testimony clear. *See McFadden* [*v. State*, 732 So. 2d 1180, 1185 (Fla. 4th DCA 1999)]. Certainly a trial judge should not be compelled to act out of confusion or a misapprehension of the facts. The capacity to clear up ambiguous or confusing testimony, however, is not an invitation to trial judges to supply essential elements in the state's case. *Id.*
>
> A review of the transcript indicates that the court's questioning of witnesses in the present case went well beyond an attempt to clear up ambiguities. While numbers are not necessarily determinative, we cannot help but notice that the trial judge here asked the victim forty questions, while the prosecutor asked her three.

*Id.* (alteration added). Similarly, in this case, a review of the court's cross-examination of the grandfather leaves no other conclusion but that the court was acting as the prosecutor in grilling the witness on the prior criminal incidents involving his grandson. The court immediately started the cross-examination of the witness without allowing the prosecutor to

6

ask any questions. The questioning went far beyond clearing up ambiguities and was directed to discrediting the witness. By the time the court had finished, the prosecutor had only one question. The court was not neutral but had taken on the role of the prosecutor.

As we said in *McFadden*, 732 So. 2d at 1184, "The requirement of judicial impartiality is at the core of our system of criminal justice." We quoted from *State ex rel. Davis v. Parks*, 141 Fla. 516, 519-20, 194 So. 613, 615 (1939), which bears repeating here:

> This Court is committed to the doctrine that every litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of Courts to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice.
>
> It is not enough for a judge to assert that he is free from prejudice. His mien and the reflex from his court room speak louder than he can declaim on this point. If he fails through these avenues to reflect justice and square dealing, his usefulness is destroyed. The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies, purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this.

*Id.* As it is apparent that the court deviated from a position of neutrality, it did not secure to this defendant the assurance of judicial impartiality "at the core of our system of criminal justice." *Id.* Therefore, we reverse and remand for resentencing before a different judge.

Appellant also challenges the court's consideration of his juvenile convictions which were more than five years old at the time of commission of the current offense, claiming that *Norvil v. State*, 191 So. 3d 406, 408 (Fla. 2016), precludes their consideration. We disagree. In *Norvil*, a trial court had considered an arrest subsequent to the primary offense in sentencing a defendant, but the Criminal Punishment Code did not include subsequent arrests as a sentencing factor. *Id.* at 407-09. The supreme court held that the trial court could not consider factors not authorized in the CPC in sentencing, concluding that courts should

7

consider only prior arrests and convictions rather than arrests subsequent to the primary offense. *Id.* at 409. It looked to those factors enumerated in the provisions of the presentence investigation report, noting that under section 921.231(1)(c), Florida Statutes (2010), a court may consider an offender's prior arrests and convictions, as well as the definition of "prior record" in the CPC. *Id.*; *see* §§ 921.0021(4), (5), Fla. Stat. (2010).

The "prior record" of a defendant, as defined in the CPC, excludes juvenile dispositions for offenses committed more than five years prior to the primary offense. *See* § 921.0021(5), Fla. Stat. (2016). Such convictions cannot be scored for purposes of determining the lowest permissible sentence and should not appear as a "prior record" on the sentencing scoresheet. *See* § 921.0021(5), Fla. Stat. (2016); Fla. R. Crim. P. 3.704(d)(14)(B); *Graham v. State*, 950 So. 2d 526, 526 (Fla. 4th DCA 2007). Nevertheless, as noted in *Norvil*, the legislature authorizes the inclusion of prior arrests and convictions as information to assist the court in determining a proper sentence for the defendant. *See* §§ 921.231(1)(c); 948.015(3), Fla. Stat. (2016). Arrests and convictions for crimes committed while a juvenile would fall into that broad category, whether or not they were within five years of the primary offense. The legislature placed no time limit on the information to be supplied to the court in a presentence investigation. Thus, appellant's juvenile convictions could be considered, even though they could not be scored.

While it does not appear that a PSI was prepared in this case, this does not mean that the court could not consider information that would have been contained in a PSI if it had been available and verified. Because the prior criminal history of a defendant is deemed relevant, even if not scored for the CPC lowest permissible sentence, the court may consider it in sentencing. On remand, however, the court should omit such convictions on the scoresheet as a "prior record," because they are not part of the CPC prior record.

For the foregoing reasons, we reverse for resentencing by another judge, consistent with this opinion.

GROSS and TAYLOR, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***