DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD CARLTON JOHNSTON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-1790

[March 1, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Sherwood Bauer, Jr., Judge; L.T. Case No. 21000174CFAXMX.

Carey Haughwout, Public Defender, and Elijah Giuliano, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Sorraya M. Solages-Jones, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant, Richard Carlton Johnston, timely appeals his judgment of conviction and sentence for two counts of resisting an officer without violence. He raises five issues: 1) whether fundamental error occurred because the jury could have issued a non-unanimous verdict for the two counts of resisting arrest; 2) whether fundamental error occurred because the evidence did not show that appellant was guilty of any offense; 3) whether cumulative error occurred in the prosecutor's cross-examination of appellant and closing argument, necessitating a new trial; 4) whether fundamental error occurred because appellant was entitled to be tried before a twelve-person jury; and 5) whether fundamental error occurred in sentencing because the court took on the role of the prosecutor in questioning appellant. We affirm as to all issues raised.

All of the charges brought against appellant are based on two encounters with Martin County Sheriff deputies, both in the early morning on February 21, 2021. He was charged with six counts—two counts of

battery on a law enforcement officer,[1] two counts of resisting an officer with violence,[2] disorderly intoxication, and giving a false name while arrested or detained. The State proceeded to trial on all counts except disorderly intoxication.

The State's case consisted of testimony from the four officers involved in the two interactions with appellant, and pictures of appellant taken after the altercations. The four officers' testimony was largely consistent as to the evening's events.

Deputy Ardon and Deputy Elliott were called to a disturbance at a bar. When they arrived, Deputy Ardon observed appellant walking across the street with significant blood coming out of his nose. Appellant said he had been punched at the bar. The deputies asked him to sit and wait for fire rescue. Deputy Ardon asked appellant his name, and he gave a name and date of birth which both later proved to be incorrect.

In the meantime, Deputy Elliott went to talk with the bar's bouncer to determine what had happened. After speaking with the bouncer and other bar patrons, Deputy Elliott learned that appellant had been causing problems at the bar and had been trying to fight the bouncer. Deputy Elliott concluded that the bouncer hit appellant in an act of self-defense. The bouncer stated that the bar wanted Deputy Elliott to issue appellant a trespass warning.

As all of this was unfolding, fire rescue took appellant to a hospital emergency room. The sheriff deputies received a 911 call from the ER that a person (appellant) had run away from the hospital. A deputy who had not been at the bar scene was the first to reach the hospital and found appellant crouched in a fetal position down the road from the hospital. The deputy asked appellant why he was running away from the hospital, and appellant responded by asking the deputy why he was hitting him. The officers from the bar incident, Deputies Ardon and Elliott, and a fourth deputy arrived shortly thereafter.

Appellant kept asking the deputies why they were hitting him. Because of his prior injuries as well as his bizarre behavior in contending that the deputies were hitting him, they handcuffed him to take him back to the hospital. At some point, the deputies recovered appellant's wallet and

[1] Count I was for battery on Deputy Ardon and Count II was for battery on Deputy Elliott.

[2] Count V was for resisting Deputy Ardon with violence and Count VI was for resisting Deputy Elliott with violence.

discovered that he had given them the wrong name and date of birth at the bar. Deputy Ardon testified that Deputy Elliott placed appellant under arrest, although he did not state what the charge was.

Appellant began flailing his body, making it difficult for the officers to carry him. They had to put him down, and he began hitting his head on the asphalt. They moved him to a grassy area. Appellant looked right at Deputy Ardon and said, "are you trying me" and then kicked Deputy Ardon in the back of his leg. Deputy Ardon was not injured.

The deputies finally got appellant into a patrol vehicle and drove him back to the ER. At some point appellant lost consciousness, but he regained it by the time he was in the hospital.

Inside the ER, Deputies Ardon and Elliott moved appellant onto a gurney. They laid him on his back and removed the handcuffs. Appellant continued to flail and became erratic. They were attempting to handcuff him again to the gurney when appellant slapped Deputy Elliott in the face with an open hand. Deputy Elliott slapped him back in the face. Appellant also spit blood at the deputies. He was then sedated, and the incident ended.

All of the deputies testified that, except for the slap by Deputy Elliott, none of the deputies hit appellant or dropped him. They testified that they had tried to prevent appellant from injuring himself.

Appellant's version of the events was dramatically different than that of the officers. He testified that he was in a parking lot near the bar after eating at a restaurant in the area. The bouncer was also outside in the parking lot with his buddies. Appellant testified that he was arranging for a ride home with a girl who worked at the bar. The bouncer apparently did not like that, approached appellant, and hit him in the nose. After being punched, appellant testified he was approached by law enforcement, perhaps Deputy Ardon. He told the officer he had been punched, and then a few minutes later an ambulance arrived. He denied giving the deputy a false name and birth date.

Appellant testified that he was in a daze at the hospital and decided to leave. He informed hospital staff that he declined treatment, not wanting a large bill. He walked out into the parking lot, trying to find a ride home. He was approached by a deputy who wrenched his arm. When appellant tried to grab his phone, the deputy slammed him to the ground. His phone cracked, and he lost consciousness.

3

When he regained consciousness, other deputies were there. The deputies handcuffed his hands behind his back. They then picked him up, carrying him "like a hog." The deputies brought him to a grassy area and dropped him face down onto the grass. Appellant was uncomfortable lying on the ground with a blade of grass poking into his eye. He tried to adjust his body to breathe better twice, and Deputy Ardon pushed him back down. The deputies flipped appellant over so that he lay on the handcuffs. They kicked, pushed, and jabbed him, and at one point they dropped appellant in the parking lot onto the asphalt.

Appellant said he lost consciousness and woke up in a hospital bed. He has some memory of Deputy Elliott striking him in the face. He remembered telling Deputy Elliott that he would press charges against him.

Appellant testified that he would never intentionally attack or strike an officer for any reason. He did not recall kicking Deputy Ardon or intentionally hitting Deputy Elliott.

After both the State and defense rested, the court denied appellant's motion for judgment of acquittal. The parties then proceeded to closing argument and jury deliberations. The jury returned a verdict for the lesser-included offense of resisting an officer without violence as to both resisting counts and not guilty as to the other charged offenses. The trial court entered judgment consistent with the verdict and sentenced appellant to one year in county jail for each count to run consecutively. Appellant thereafter filed this appeal.

## Analysis

### Did the Possibility of a Non-Unanimous Verdict Constitute Fundamental Error

The State charged appellant with two counts of resisting arrest with violence: one charge for doing violence to Deputy Ardon, the other for doing violence to Deputy Elliott. In closing argument, the prosecutor argued appellant did violence or battery to Deputy Ardon when appellant kicked him in his leg, and that appellant did violence or battery to Deputy Elliott when appellant slapped him in the ER. The jury returned a verdict of resisting arrest without violence on each charge.

Appellant contends that his two convictions for resisting an officer without violence could have been the result of a non-unanimous verdict and fundamental error. He arrives at this contention by pointing to the

4

record identifying four actions that he contends could have supported the lesser included resistance without violence, including his flailing at the officers outside the hospital, his altercation with them inside the hospital, and spitting blood at them. Because the individual jurors each could have credited a different act of appellant which constituted the act of resisting, the verdict may not have been unanimous, which is a fundamental error.

"As a state constitutional matter, a criminal conviction requires a unanimous verdict in Florida." *Shahgodary v. State*, 336 So. 3d 8, 11 (Fla. 4th DCA 2022) (quoting *Robinson v. State*, 881 So. 2d 29, 30 (Fla. 1st DCA 2004)). "[J]urors 'must unanimously agree that each element of the charged offense has been established beyond a reasonable doubt.'" *Id.* (quoting *Perry v. State*, 10 So. 3d 695, 697 (Fla. 1st DCA 2009)). "Thus, 'where a *single count* embraces two or more separate offenses, albeit in violation of the same statute, the jury cannot convict unless its verdict is unanimous as to at least one specific act.'" *Id.* (emphasis supplied) (quoting *Robinson*, 881 So. 2d at 31). "An infringement upon a defendant's right to a unanimous jury verdict can result in fundamental error." *Id.* Appellant relies on *Perley v. State*, 947 So. 2d 672 (Fla. 4th DCA 2007), to make his "non-unanimous verdict" argument, but that case is distinguishable. In *Perley*, a defendant was charged with one count of escape, but at trial the State presented two incidents which could have constituted the defendant attempting an escape. *Id.* at 674. The defendant first ran from a vehicle after being stopped by the police, and after being apprehended and taken to a hospital, he attempted to escape again. *Id.* During the trial, the State informed the jury that it could convict the defendant of escape based upon either incident. *Id.*

On appeal, we concluded that fundamental error had occurred by "allowing the jury to deliberate on two separate instances of escape where [the defendant] was only charged with one count of escape." *Id.* "By allowing the State to tell the jury it could convict [the defendant] for either instance of escape, the trial court compromised the jury's ability to render a unanimous verdict." *Id.*

Similarly, in *Chaffin v. State*, 121 So. 3d 608 (Fla. 4th DCA 2013), we found that the defendant was entitled to a new trial on his conviction for tampering with evidence "because the State presented the jury with two separate incidents of tampering in support of one charge." *Id.* at 615. Based on *Perley*, this court held that a non-unanimous verdict could have resulted. *Id.* at 616; *see also Shahgodary*, 336 So. 3d at 13 (finding fundamental error where State charged one count of violating an injunction for protection against domestic violence injunction, but the

5

prosecutor told the jury that it could find the defendant guilty based upon any one of five different acts).

By contrast, in this case the State charged appellant with two counts of resisting with violence against two different deputies. The prosecutor argued to the jury that the resisting with violence charge involving Deputy Ardon was based upon appellant kicking him, and the charge involving Deputy Elliott was based on appellant slapping him. The prosecutor never argued that the jury could find appellant guilty based on any other act.

The mere possibility that a juror could look to some act other than the one which the prosecutor argued to satisfy an element of the crime is insufficient to warrant a reversal of a conviction. *See, e.g.*, *Charles v. State*, 311 So. 3d 283, 287 (Fla. 2d DCA 2020). Where the State does not affirmatively advise the jury that it can convict using any number of acts as the essential element of the crime, the possibility of a non-unanimous verdict does not constitute fundamental error.

Here, appellant simply speculates that the jury might have viewed other acts as resisting without violence. But the State never argued that any of those other acts constituted acts of resisting. Without more, there is no fundamental error.

Appellant argues in the alternative that the two convictions for resisting violate double jeopardy, because the two convictions were part of a single criminal episode. He relies on *Wallace v. State*, 724 So. 2d 1176 (Fla. 1998). In that case, the supreme court held that where multiple officers are involved with attempting the arrest of one individual, "continuous resistance to the ongoing attempt to effect [the defendant's] arrest constitutes a single instance of obstruction under section 843.01." *Id.* at 1181.

Unlike *Wallace*, the two charges of resisting against appellant were not the result of one continuous resistance. Appellant kicked Deputy Ardon while being restrained outside the hospital. He then lost consciousness, as even he admitted, and ended up in the hospital on a gurney when he slapped Deputy Elliott. Because the two events were separated both geographically and temporally, the convictions on both charges did not violate the double jeopardy prohibition. *See Hayes v. State*, 803 So. 2d 695, 699–705 (Fla. 2001).

**Lawful Execution of a Legal Duty of the Officers**

"To prove the offense of resisting an officer without violence [pursuant to section 843.02, Florida Statutes (2020)], the State had to present evidence: (1) that [Officer Ardon and Officer Elliott] w[ere] engaged in the lawful execution of a legal duty and (2) that [appellant]'s actions constituted obstruction or resistance of that duty." *Lu Jing v. State*, 316 So. 3d 724, 730 (Fla. 4th DCA 2021) (citations omitted). "The threshold for establishing the commission of an offense under [section 843.02] is that the officer be in the 'lawful execution' of a 'legal duty.'" *C.E.L. v. State*, 995 So. 2d 558, 560 (Fla. 2d DCA 2008).

While appellant did move for judgment of acquittal, his arguments below are not the same as his arguments on appeal. Therefore, appellant must show fundamental error. Fundamental error occurs when the evidence is insufficient to show that a crime has been committed. *See F.B. v. State*, 852 So. 2d 226, 230 (Fla. 2003) ("The second exception to the requirement that claims of insufficiency of the evidence must be preserved occurs when the evidence is insufficient to show that a crime was committed at all."); *Young v. State*, 141 So. 3d 161, 165 (Fla. 2013) (same).

Appellant argues that the deputies were not lawfully engaged in a legal duty when they brought him back to the emergency room for medical care because he had a right to decline medical care. *See In re Guardianship of Browning*, 568 So. 2d 4, 11 (Fla. 1990) (holding "a competent person has the constitutional right to choose or refuse medical treatment, and that right extends to all relevant decisions concerning one's health"). He concentrates his argument on whether the State presented evidence of a legal duty in which the officers were engaged. We conclude that sufficient evidence showed a legal duty.

The State provided several grounds to show that the officers were exercising a legal duty. The first officer on the scene responded to a 911 call that a patient had run from the hospital. Responding to a 911 call is a legal duty of an officer. *Francis v. State*, 736 So. 2d 97, 99 n.1 (Fla. 4th DCA 1999). Further, the officer testified that when a call from a hospital is received, the officers must determine why the person is leaving the hospital. If the escapee was there pursuant to the Baker or Marchman Act, then he would not be free to leave the hospital. The officers considered appellant's behavior to be bizarre, and he had observable injuries. For these reasons, they elected to return him to the hospital. We conclude that the testimony sufficiently supports the legal duty of the officers at the time, even though no Baker Act custody was involved in this case.

In addition, Deputies Ardon and Elliott arrived after having been investigating the bar incident. They had evidence from the bar that

7

appellant had been the aggressor and committed a battery on the bouncer. They also were trying to confirm the name which he gave them, which turned out was false. None of the deputies testified that their investigation had concluded when they arrived at the hospital. Clearly, investigation of a crime is a legal duty of the deputies and required appellant's detention.

In *Bush v. State*, 295 So. 3d 179 (Fla. 2020), the court set forth the standard of review for the legal sufficiency of evidence:

> The standard of review historically applied to a determination of the legal sufficiency of evidence to support a criminal conviction, at least where there is some direct evidence, is simply whether the State presented competent, substantial evidence to support the verdict. *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981); *Spinkelink v. State*, 313 So. 2d 666, 671 (Fla. 1975). To apply this standard to a criminal case, an appellate court must "view[ ] the evidence in the light most favorable to the State" and, maintaining this perspective, ask whether "a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt."

*Id.* at 200 (alteration in original). Here, viewing the evidence in the State's favor, we conclude that the evidence supported the jury's findings. We affirm.

### Improper Prosecutorial Cross-Examination and Closing Argument

In his next issue on appeal, appellant contends that the prosecutor engaged in improper cross-examination of appellant and made numerous improper statements in closing argument, necessitating a new trial. Most of the alleged errors were not objected to during cross-examination or in closing argument. Therefore, to require a new trial they must be fundamental error, meaning an error which reaches the validity of the trial such that a guilty verdict could not have been obtained without it. *Cherfrere v. State*, 277 So. 3d 611, 614 (Fla. 4th DCA 2019). The prosecutor's cross-examination and closing argument do not rise to that level.

After appellant testified on direct examination that he was roughed up by the officers during the incident, the prosecutor commenced an aggressive cross-examination of appellant. Appellant became hostile and accused the officers of a cover-up, aided by the prosecutor filing charges against appellant. Appellant accused the officers of dishonesty. The exchanges got heated, and the prosecutor admitted that at times he was

8

being sarcastic with his questions, for which he apologized. Defense counsel's objections were few and lacked specificity, other than objecting to a few questions as argumentative or asking for speculation. As to those, we conclude that the court did not err in overruling those objections. This was a very tense situation with the appellant calling the prosecution witnesses dishonest and presenting himself as a victim. Perhaps the prosecutor may have been more aggressive than the tenets of professionalism should allow, but on this record we cannot conclude that his cross-examination vitiated the entire trial.

Similarly, defense counsel made very few objections in closing argument, necessitating a finding of fundamental error to warrant a new trial. We cannot conclude that the comments of the prosecutor collectively deprived appellant of a fair trial. Even if some comments were inappropriate, the comments do not warrant a new trial. *See Varsam v. State*, 314 So. 3d 278, 278 (Fla. 4th DCA 2021); *see also Robinson v. State*, 211 So. 3d 59, 60 (Fla. 4th DCA 2017) (agreeing the State made several inappropriate comments during closing but concluding the "comments, both singularly and collectively, did not rise to the level of fundamental error").

## Challenge to Size of Jury

Appellant briefly argues that he was entitled to be convicted by a twelve-member jury rather than a six-member jury under the Sixth and Fourteenth Amendments of the United States Constitution. We have already held that a defendant is not entitled to a twelve-member jury in *Guzman v. State*, 350 So. 3d 72, 73 (Fla. 4th DCA 2022).

## Sentencing Hearing

Finally, appellant contends he is entitled to a new sentencing proceeding, because the judge took on the role of a prosecutor in questioning him during the sentencing hearing. We disagree.

At sentencing, appellant testified, apologizing for the court's time and stating that he realized he sometimes had not "honored the position of authority," telling the court that this was not the first time he had a resisting arrest conviction. He asked for leniency and for time served.

The court then asked the State if it had any evidence, and the prosecutor listed multiple misdemeanors of which appellant had been convicted, including four convictions for resisting arrest, the same crimes for which he had been convicted in this case. The prosecutor noted the

9

crimes for which the jury found him guilty would be his fifth and sixth crimes, and the prosecutor recommended a sentence of a year in jail for each count to be served consecutively.

The court stated that it was unaware of the four prior convictions and wanted to know why four convictions would not be "hugely significant." The court wanted some explanation, such as whether they all arose from one or two events. Appellant then stated that he thought they were double charged but he did not recall. The State was able to access the prior convictions: one in Duval County in 2012; one in Duval County in 2016; one in Martin County in 2017; and one in Savannah, Georgia in 2016. The court then asked appellant whether he recalled these convictions. Appellant said he thought he did, and he apologized for having the convictions. The court commented that his apology had no meaning when he kept getting convicted of the same crime. Appellant then volunteered other unsettling events in his life occurring at the time of his prior convictions as a way of explanation.

The court also wanted to know more about the sentence on the 2017 Martin County charge, which the State looked up. Appellant was convicted of resisting without violence and given a fifteen-day sentence.

The court then addressed appellant, telling him that being a repeat offender most bothered the court at sentencing. After appellant volunteered more information about his belief that his rights had not been observed in some of these incidents, the court commenced sentencing appellant, stating:

> Believe it or not, the purpose for my discussions at sentencing, . . . is because I actually do try to find a reason to be generous in my sentence . . . One of the things that has always bothered me in sentencing . . . is when they do the same thing over and over again. . . . it's just there's no excuse for it . . . .

The court sentenced appellant to one-year terms for each offense, to be served consecutively.

Appellant contends that the trial court abandoned neutrality while inquiring into his prior criminal convictions. He relies on this court's decision in *Parr v. State*, 247 So. 3d 550 (Fla. 4th DCA 2018). In *Parr*, after the defendant entered an open plea, the defendant's grandfather was called as a witness. *Id.* at 552. The grandfather testified that the family did not want the defendant to go back to jail and testified when asked by

the court that the defendant was "absolutely not" a danger to the community. *Id.* The court then began to question the grandfather without waiting for the prosecutor to question him. We noted, "[t]he questioning went far beyond clearing up ambiguities and was directed to discrediting the witness," concluding that the court was "not neutral but had taken on the role of a prosecutor." *Id.* at 555.

Here, we do not view the court's questioning of appellant as taking on the role of a prosecutor. Instead, we understand that the questioning was to inform the court fully on the sentence. As the court itself noted, it asked questions to look for reasons to be "generous." It was not seeking to discredit appellant as a witness.

Further, the court was inquiring on a matter which the State raised—appellant's four prior convictions for resisting. This makes it distinguishable from *Lang v State,* 228 So. 3d 153 (Fla. 4th DCA 2017), also relied upon by appellant. In *Lang,* the court made its own examination of other unrelated court records to discover a conviction not mentioned by the prosecutor. *Id.* at 154. The court then used that conviction to assess the credibility of defendant's testimony on the violation of probation charge. *Id.* at 154–55. Here, the court only asked the State for additional information with respect to charges that the State had raised (and appellant had also admitted) to ascertain the length of sentence previously imposed. We see nothing improper about the court making that type of inquiry so that the court has a full understanding of appellant's record for purposes of sentencing, where the record factors into the sentence. The court did not depart from a position of neutrality.

### Conclusion

No fundamental error occurred in the trial, as any errors were not sufficient to vitiate the entire trial, and the court did not depart from a position of neutrality in the sentencing proceeding. We thus affirm appellant's conviction and sentence on all issues.

*Affirmed.*

CIKLIN and FORST, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***